CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 0 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

WILLIAM A. HENAHAN, )
)
Plaintiff, ) Civil Action No. 7:16-CV-00042
)
) **MEMORANDUM OPINION**
v. )
)
UNITED STATES OF AMERICA, ) By: Hon. Glen E. Conrad
) Chief United States District Judge
Defendant. )
)

Plaintiff William A. Henahan filed this action against the United States of America (the "government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680, seeking to recover for injuries he sustained during a surgery performed at the Veterans Affairs Medical Center in Durham, North Carolina ("Durham VAMC"). The case is presently before the court on various motions from the government. For the following reasons, the government's motion for partial dismissal as to claims against the health care providers at the Veterans Affairs Medical Center in Salem, Virginia ("Salem VAMC") will be granted, its motion to dismiss allegations that North Carolina laws are unconstitutional will be granted in part and denied in part, and its motion seeking a court order that North Carolina substantive law applies will be granted.

**Factual Background**

The following facts, taken from plaintiff's complaint, are accepted as true for purposes of the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

William A. Henahan is a 65-year-old Vietnam War veteran. On or about July 26, 2011, Henahan received an elevated prostate-specific antigen ("PSA") test at the Salem VAMC. On or

about July 29, 2011, a prostate biopsy confirmed that Henahan had "prostate cancer Gleason grade 6-9." Compl. ¶ 19. In August of 2011, he was also diagnosed with adenocarcinoma of the prostate. Henahan received another PSA test in October of 2011, which again revealed abnormal results. Chin-Ti Lin, M.D., a urologist at the Salem VAMC, was aware of Henahan's elevated PSA tests but did not offer radiohormonal therapy or cryotherapy for his adenocarcinoma. The Salem VAMC referred Henahan to the Durham VAMC for surgery, and on January 5, 2012, Dr. Erin McNamara, a resident surgeon, saw Henahan at the Durham VAMC.

The complaint alleges that Henahan has an extensive medical history of "diabetes mellitus type II with neuropathy, hypertension, respiratory distress, hepatitis C, kidney disease, anxiety disorder[], post-traumatic stress disorder, and mood disorder, all of which mitigated against a significant surgery." Id. ¶ 29. Henahan did not receive any treatment for his prostate cancer between August of 2011 and February of 2012.

On February 8, 2012, an MRI performed on Henahan revealed "no evidence of extracapsular extension of the disease and no significant lymphadenopathy." Id. ¶ 33. Dr. Stephen Freedland at the Durham VAMC evaluated Henahan and recommended that Henahan proceed with a radical prostatectomy. Dr. Freedland was undertaking a clinical study on radical prostatectomy at the time.

On February 15, 2012, Dr. Freedland and Dr. McNamara, a resident surgeon, performed a radical prostatectomy with "extended bilateral pelvic lymphadenectomy" on Henahan at the Durham VAMC. Id. ¶ 35. During the surgery, Dr. Freedland and Dr. McNamara placed a surgical clip across Henahan's right ureter, and Henahan experienced extensive blood loss. The next day, Henahan was "profoundly hypoxic with fluid overload, liver dysfunction, renal failure,

2

cardiopulmonary insufficiency[,] and a distended abdomen." Id. ¶ 38. He subsequently required a blood transfusion.

Over the course of several days, Henahan's urine output declined and his serum creatinine levels increased, indicating a urine leak and kidney complications. A renal ultrasound also revealed hydonephrosis. On February 22, 2012, medical providers at the Durham VAMC removed Henahan's drain, placed a stitch at the drain site, and discharged him.

Over the course of several months, Henahan continued to suffer from abdominal pain and complications. On June 12, 2012, an antegrade urogram revealed that Henahan's right ureter was obstructed. On July 23, 2012, he underwent a right ureteral reconstruction with "ileal ureter, cystoscopy with dilation of the bladder neck contracture, and appendectomy." Id. ¶ 63. Henahan remained hospitalized for a week. After his discharge, he had to return to the emergency department on multiple occasions because of catheter difficulties and infections. On August 7, 2012, Henahan was also diagnosed with "vancomycin-resistant enterococci." Id. ¶ 68.

In October of 2012, a cystoscopy performed on Henahan revealed bladder neck closure with a "very dense and hard" contracture. Id. ¶ 82. On October 29, 2012, Henahan underwent a "transurethral resection" of his bladder neck. Id ¶ 84. He continues to be catheter-dependent and suffers from pain, infection, incontinence, mental distress, and associated illnesses. He also will require future medical treatment for his conditions.

**Procedural History**

On January 11, 2013, Henahan filed an administrative claim, through an executed Standard Form 95, with the Department of Veterans Affairs (the "DVA"). In that claim, Henahan explained that he had undergone a radical prostatectomy at the Durham VAMC. He then alleged that Drs. Freedland and McNamara failed to appropriately perform his surgery. Specifically

3

Henahan claimed that they violated their standard of care by: (1) failing to take proper precautions in his care; (2) placing the surgical clip across his right ureter; and (3) failing to identify the surgical clip's improper location and remove it before closure of the surgical site. In addition, he alleged that the employees at Durham VAMC failed to timely and properly assess, identify, and treat his condition. He sought compensation for his injuries in the amount of $2,000,000.00.

Between April of 2013 and December of 2013, Henahan's counsel and the DVA discussed Henahan's claim and settlement options. These letters provided additional information as to the circumstances surrounding Henahan's surgery and the "investigation, diagnosis, and treatment of his obstruction and urine leak." Ex. 3 to Def's Mot. to Dismiss, Docket No. 4-3. In a letter dated May 20, 2013, Henahan's counsel reiterated that the primary source of Henahan's injuries was the "damage to his ureter during the course of a certain surgical procedure at the Durham facility." Ex. 4 to Def's Mot. to Dismiss, Docket No. 4-4. In a letter dated September 13, 2013, the DVA stated that it completed its investigation into Henahan's administrative claim, in which Henahan alleged that "VA healthcare providers at the Durham [VAMC] negligently placed a clip across his right ureter during his retropubic prostatectomy," and that "VA healthcare providers negligently failed to timely and properly identify and treat Mr. Henahan's condition." Ex. 5 to Def's Mot. to Dismiss, Docket No. 4-5. In that letter, the DVA proposed a settlement amount and invited Henahan to provide a counter-offer, if he believed that his claim was worth more. The DVA indicated that, to date, Henahan had not provided a theory of the case that warranted a higher settlement amount. On October 24, 2013, Henahan's counsel rejected the DVA's offer. In support of the rejection, counsel provided a letter from a radiologist, in which the radiologist indicated a high likelihood that Henahan suffered a transection of his right ureter

4

at the time of the prostatectomy. Henahan's counsel followed up with another letter on December 5, 2013, reiterating that Henahan suffered a surgical injury to his right ureter.

On February 7, 2014, the DVA denied Henahan's administrative claim. Henahan then filed a request for reconsideration of the denial on August 1, 2014. Henahan attached an amendment to his original administrative claim to the request, in which he asserted allegations of negligence in the preoperative period and the impropriety of his prostatectomy. On June 3, 2015, Henahan's counsel provided the DVA with an expert report from Dr. James C. Jensen, a specialist in the field of urological oncology, in which Dr. Jensen outlined the various breaches of the standard of care in Henahan's case.

Henahan filed this action on February 8, 2016, alleging that the medical providers at both the Salem VAMC and the Durham VAMC committed medical malpractice. Specifically, Henahan claims that the Salem VAMC health care providers were negligent in steering him towards surgery at the expense of alternative therapies. In addition, Henahan alleges that the Durham VAMC medical providers were negligent in performing his prostatectomy on February 15, 2012, as well as diagnosing and treating his intraoperative ureter injury. He seeks $2,000,000.00 in compensatory damages with pre- and post-judgment interest.

On April 18, 2016, the government filed a motion for partial dismissal of the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The government contemporaneously filed a motion seeking a court order that North Carolina substantive law applies and a motion to dismiss the allegations in the complaint that certain North Carolina laws are unconstitutional. The court held a hearing on the motions on July 18, 2016. The motions have been fully briefed and are now ripe for disposition.

5

Case 7:16-cv-00042-GEC   Document 27   Filed 08/30/16   Page 5 of 15   Pageid#: 284

## Standards of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for lack of subject matter jurisdiction. The plaintiff bears the burden of proving that subject matter jurisdiction exists. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). When evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court can "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens–Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted).

## Discussion

### I. Motion for Partial Dismissal as to Claims Against the Salem VAMC Health Care Providers

The government argues that the court lacks subject matter jurisdiction over Henahan's FTCA claims as to the Salem VAMC health care providers because he failed to exhaust his administrative remedies. The United States is immune from suit except where it consents to be sued. Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471, 475 (1994). The terms of that "consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (internal citations omitted). A plaintiff seeking to sue the United States bears the burden of showing "that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." Welch v. United States,

6

409 F.3d 646, 651 (4th Cir. 2005). Any waiver of sovereign immunity must be "strictly construed … in favor of the sovereign." Id.

The FTCA requires that a plaintiff file an administrative claim against the agency whose employees' allegedly tortious conduct forms the basis of his claim before he can file suit against the United States. 28 U.S.C. § 2675(a). The administrative claim must be "presented" to the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b). The regulations promulgated pursuant to the FTCA provide that a claim is "presented" when the agency receives from the claimant "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." 28 C.F.R. § 14.2(a). Courts have interpreted this notice provision to require that the claimant provide "(1) a written statement describing the injury in enough detail to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." Blankenship v. United States, 111 F. Supp. 3d 745, 751 (W.D. Va. 2015) (Conrad, J.) (citing Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994)). The United States Court of Appeals for the Fourth Circuit has observed that "the requirement of filing an administrative claim is jurisdictional and may not be waived." Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986).

There is no dispute that Henahan filed a Standard Form 95 with the DVA within two years after his surgery on February 15, 2012, and that he included a sum certain demand in his administrative claim. The government, however, argues that Henahan's claim failed to give the DVA sufficient notice as to his allegations of negligence against the Salem VAMC health care providers. The Fourth Circuit has provided that "[w]e do not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery … or

7

every factual detail that might be relevant." Drew v. United States, 217 F.3d 193, 203 (4th Cir. 2000) reh'g en banc granted, opinion vacated, aff'd by equally divided court without opinion, 231 F.3d 927 (4th Cir. 2000) (quoting Burchfield v. United States, 168 F.3d 1252, 1255 (11th Cir. 1999)). "In short, the amount of information required is 'minimal.'" Id.

Nevertheless, the FTCA does not require an agency to "undertake an independent search for injuries or theories of liability that are not closely related to the matters described in the claim." Burchfield, 168 F.3d at 1256. In addition, "notice must do more than cause 'the government to sift through the record.'" Richland-Lexington Airport Dist. v. Atlas Props., Inc., 854 F. Supp. 400, 412 (D.S.C. 1994) (quoting Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983)); see also id. at 1257 (finding that § 2675(a) does not mean that "an agency will be on notice of all the facts contained in voluminous records presented by a claimant, if the claimant has not pointed to specific sources of injury"). Finally, "a claim may be so vague and lacking in detail that the agency cannot be expected to initiate any investigation at all." Id.; see also Tidd v. United States, 786 F.2d 1565, 1568 (11th Cir. 1986) ("For an agency to be able to initiate an investigation into a tort claim … it must be apprised of the location and approximate date of the incident."). Overall, "notice must be sufficiently detailed so that the United States can evaluate its exposure as far as liability is concerned." Richland-Lexington Airport Dist., 854 F. Supp. at 412 (internal quotation marks omitted).

In the instant case, the narrative contained in Henahan's administrative claim began on February 15, 2012, the date of his prostatectomy. Henahan described the surgery and the resulting complications. Henahan claimed that Drs. Freedland and McNamara violated their standard of care by: (1) failing to take proper precautions in his care; (2) placing the surgical clip across his right ureter; and (3) failing to identify the surgical clip's improper location and remove

8

it before closure of the surgical site. He also alleged that the employees of the Durham VAMC failed to timely and properly assess, identify, and treat his condition. There is no mention of Dr. Lin or any other employee of the Salem VAMC. Instead, the administrative claim only referred to Dr. Freedland, Dr. McNamara, and employees at the Durham VAMC. Thus, the court believes that the DVA was not adequately informed that Henahan's claim was premised, at least in part, on the negligence of individuals other than those employed by the Durham VAMC. See Blankenship, 111 F. Supp. 3d at 751-52 (finding that, by repeatedly identifying eight Salem VAMC employees by name, the claimant put the DVA on notice that his negligence claim was based, at least in part, on the negligence of those individuals); see also Wilson v. United States, No. ELH-11-1205, 2012 WL 1555442, at *8 (D. Md. Apr. 20, 2012) (finding that the plaintiff's administrative claim did not put the DVA on notice as to claims related to his first surgery because, in part, the surgeon was not named in the claim).

Furthermore, the administrative claim contained no facts as to Henahan's experience at the Salem VAMC or the circumstances surrounding Dr. Lin's decision to refer him to Durham VAMC for the prostatectomy. In addition, Henahan did not challenge the decision to proceed with the surgery. While Henahan is not required to recite every theory of liability or outline his potential lawsuit in the administrative claim, the court does not believe that the claim gave notice to the DVA that it should assess its liability exposure based on the conduct of employees at the Salem VAMC under any interpretation. See Wilson, 2012 WL 1555442, at *8 (noting that the administrative claim "did not ... provide any other details regarding the [first] surgery" in order to put the DVA on notice); see also Bush v. United States, 703 F.2d 491 495 (11th Cir. 1983) (affirming the district court's dismissal of the plaintiff's claim of lack of informed consent, as the administrative claim and the attached medical evaluation contained no challenge to the consent

9

form); see also Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1980) (finding that the administrative claim's reference to the claimant's wife's transfer to a civilian hospital was sufficient to put the Army on notice that this transfer was part of the chain of events that culminated in her death).

To the extent that Henahan argues that counsel's later submissions to the DVA put it on notice as to his claims against the Salem VAMC health care providers, the court is not persuaded. In fact, these submissions support the court's belief that the DVA was not on notice as to these claims. For example, a letter from counsel for the DVA on September 30, 2013 summarized Henahan's claims as the negligent placement of the surgical clip and the failure to properly diagnose and treat his condition. Counsel then went on to outline the DVA's investigation as to the cause of the injury to Henahan's right ureter. Ultimately, the DVA found that the existence of an injury to Henahan's right ureter did not necessarily mean that the health care providers breached their standard of care, as Henahan's injury was a known risk involved with this type of surgery. There was no mention of the decision for Henahan to have the surgery in the first place or any conduct attributable to the Salem VAMC health care providers. In response to that letter, Henahan's counsel forwarded a memorandum from a radiologist, in which the expert indicated a high likelihood that the injury to Henahan's right ureter was an intraoperative injury. Although the expert mentioned that he reviewed scans and reports that existed prior to Henahan's surgery, there was no mention of any negligence on the part of Salem VAMC health care providers, or that the decision to perform the surgery breached the standard of care for medical personnel.

To the extent that Henahan argues that the DVA was on notice based on some other facts that were buried in these submissions, caselaw clearly suggests that an agency is not required to

conduct such an in-depth investigation of the record without some guidance from the claimant as to the source of his injury. See Bembenista v. United States, 866 F.2d 493, 498-99 (D.C. Cir. 1989) (finding that the plaintiff did not satisfy the notice requirement when the few facts at issue were buried in "medical records, transcripts, and Army documents"). Finally, in the letter denying Henahan's administrative claim, the DVA reiterated that Henahan's allegations consisted of the negligent performance of the surgery and the negligent assessment, identification, and treatment of his condition. Therefore, the court does not believe that these submissions adequately informed the DVA that Henahan's negligence claim was premised, at least in part, on the medical care he received at the Salem VAMC. See Blankenship, 111 F. Supp. 3d at 751 (noting that one of the plaintiff's submissions in support of his administrative claim stated that "[o]thers in the operating suite also breached the standard of care" in addition to the surgeon).

Even if the administrative claim failed to give proper notice to the DVA, Henahan argues that his August 1, 2014 amended administrative claim and Dr. James C. Jensen's expert report, which was sent to the DVA on June 3, 2015, put the DVA on notice as to his claims against the Salem VAMC health care providers. As an initial matter, the court does not believe that Dr. Jensen's report fulfilled the regulatory requirements so as to constitute an administrative claim. See Ahmed, 30 F.3d at 517 (finding that 28 C.F.R. § 14.2(a) requires that the "claim be accompanied by the title or legal capacity of the person signing the form, and by evidence of such person's authority to present the claim on behalf of the claimant"). In addition, although these documents contained references to Henahan's pre-operative care, both documents were submitted more than two years after his surgery on February 15, 2012. Nevertheless, the court must determine whether Henahan's amended administrative claim relates back to his timely

11

original administrative claim so as to satisfy the statutory requirements for presentation of such claim. The court concludes that it cannot.

The FTCA acts as a limited waiver of sovereign immunity of the United States. Brown v. United States, 569 F. Supp. 2d 596, 599 (W.D. Va. 2008) ("In enacting the FTCA, Congress created a limited waiver of sovereign immunity."). As a "condition of waiver," the FTCA requires that a tort claim against the United States be brought within two years after such claim accrues. 28 U.S.C. § 2401(b); Manko v. United States, 830 F.2d 831, 841-42 (8th Cir. 1987). While regulations promulgated pursuant to the FTCA allow a claimant to amend his claim "at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a)," to avoid extending the waiver, the limitations of § 2401(b) must otherwise be strictly construed. 28 C.F.R. § 14.2(c); Manko, 830 F.2d at 838; United States v. Kubrick, 444 U.S. 111, 117 (1979) ("[I]n construing the statute of limitations [of the FTCA], which is a condition of that waiver, we should not take it upon ourselves to extend the waiver."). Thus, the court construes the limitations of the FTCA narrowly, concluding that Federal Rule of Civil Procedure 15(c), which allows for the relation back of amended pleadings, "applies only to…amendments to pleadings in ordinary lawsuits" and not administrative claims such as Henahan's claim. Manko, 830 F.2d at 840; see also Lee v. United States, 980 F.2d 1337, 1339 (10th Cir. 1992) (finding untimely supplement to an administrative claim could not relate back); Murrey v. United States, 73 F.3d 1448, 1450 (7th Cir. 1996) ("There is no 'relation back' provision corresponding to Rule 15(c)(1) of the civil rules [in the Federal Tort Claims Act.]").

Moreover, "the FTCA's statute of limitations would not have any meaning" if a plaintiff could avoid it by "merely amending the original claim to add additional claims" after the expiration of the limitations period. Whitlow v. United States, No. 5:05-152-JMH, 2005 WL

12

2403730, at *6 (E.D. Ky. Sept. 28, 2005). In the same vein, the court believes that the purpose of administrative claim requirement—to make it possible for the government to expedite fair settlement of tort claims asserted against the United States—would be frustrated if a claimant could set forth new claims after the expiration of the statute of limitations. Murrey, 73 F.3d at 1452 ("The purpose of the requirement of filing an administrative claim…would be thwarted if [the plaintiff] could add new claims after suit has begun."); Lee, 980 F.2d at 1339 ("[A]though 28 C.F.R. § 14.2(c) allows amendment of an administrative claim prior to final disposition, an amendment adding new claimants and claims outside the limitations period of the FTCA would defeat the basic purpose of the limitations period."). Therefore, the court concludes that Henahan failed to amend his claim, so as to include allegations against the Salem VAMC health care providers, in a timely fashion.

In sum, the court concludes that Henahan did not give the DVA adequate notice as to his medical malpractice claims against the Salem VAMC health care providers. Thus, he has failed to exhaust his administrative remedies, and the court lacks subject matter jurisdiction over such claims. Accordingly, the motion for partial dismissal will be granted as to claims against the Salem VAMC heath care providers.[1] Nevertheless, Henahan's claims against the Durham VAMC health care providers will proceed.

## II. Motion Seeking a Court Order That North Carolina Substantive Law Applies

In the event that the court dismisses the claims against the Salem VAMC, the government seeks an order that North Carolina substantive law applies. The FTCA waives sovereign immunity only "under circumstances where the United States, if a private person, would be liable

---

[1] The government moved for partial dismissal of the claims against the Salem VAMC under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Because the court finds that it lacks subject matter jurisdiction over these claims, the court need not address whether Henahan has pled sufficient claims against the Salem VAMC.

13

in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As such, "[i]n actions brought under the FTCA, federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred." Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983). Finding that the court only has subject matter jurisdiction over claims against the Durham VAMC health care providers, the act or omission giving rise to the instant action occurred in North Carolina, where Henahan's surgery and post-operative care took place. See id. (finding that Virginia law applied to the plaintiff's FTCA claim, as she received medical treatment in Virginia). As such, North Carolina substantive law is the applicable law in this case. Accordingly, the government's motion seeking a court order that North Carolina substantive law applies will be granted.

### III. Motion For Partial Dismissal of Allegations that North Carolina Laws are Unconstitutional

Finally, the government moves to dismiss allegations in the complaint that North Carolina laws are unconstitutional or, in the alternative, direct Henahan to comply with Rule 5.1 of Federal Rules of Civil Procedure. The government does not offer, and the court cannot identify, any legal authority that would permit the court to dismiss such claims at this time. The government's sole argument in favor of dismissal is that Henahan has failed to provide notice to the Attorney General of North Carolina. However, "[a] party's failure to file and serve the notice, or the court's failure to certify, does not forfeit a constitutional claim or defense that is otherwise timely asserted." Fed. R. Civ. P. 5.1(d). As such, the court will direct Henahan to file a notice of constitutional question and serve the notice and paper on the Attorney General of North Carolina, in accordance with Rule 5.1(a) of the Federal Rules of Civil Procedure. Upon the filing of such notice, the court will certify the constitutional question to the Attorney General of North Carolina pursuant to Rule 5.1(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2403.

14

Accordingly, the government's motion to dismiss allegations that North Carolina laws are unconstitutional will be granted in part and denied in part.

## Conclusion

For the foregoing reasons, the government's motion for partial dismissal as to claims against the Salem VAMC health care providers will be granted, and its motion to dismiss allegations that North Carolina laws are unconstitutional will be granted in part and denied in part. In addition, the government's motion seeking a court order that North Carolina substantive law applies will be granted. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 30rd day of August, 2016.

_____
Chief United States District Judge